IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELIA G. MORENO, )<br>)<br>      **Plaintiff,** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>**Commissioner of the Social** )<br>**Security Administration,** [1] )<br>)<br>      **Defendant.** ) | Case No. CIV-19-416-JFH-SPS |

## REPORT AND RECOMMENDATION

The claimant Delia Moreno requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-four years old at the time of the most recent administrative hearing (Tr. 565). She completed high school and has worked as a unit assembler, general assembler, beverage machine tender, and oiler (Tr. 531, 185). The claimant alleges inability to work since December 1, 2011, due to back and neck pain, left knee, headaches, high blood pressure, diabetes, acid reflux, and anxiety (Tr. 184).

## Procedural History

On February 6, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 13, 2013 (Tr. 11-20). The Appeals Council denied review, but this Court reversed in Case No. CIV-15-141-RAW-KEW and remanded with instructions to consider Listing 1.04 (Tr. 608-624). On remand, ALJ Doug Gabbard II held a second administrative hearing and again determined the claimant was not disabled in a written opinion dated July 11, 2017 (Tr. 632-341). The Appeals Council then reversed and remanded with instructions to properly consider Listing 1.04(A) (Tr. 650-651). On remand, ALJ Doug Gabbard II held a third administrative hearing and again

determined the claimant was not disabled in a written opinion dated February 13, 2019 (Tr. 520-532). The Appeals Council again denied review, so ALJ Gabbard's 2019 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his most recent decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could only frequently balance, stoop, kneel, crouch, crawl, operate foot controls bilaterally, and climb ramps/stairs, and that she could never climb ladders/ropes/scaffolds and must avoid exposure to unprotected heights. Further, he found that she should only have occasional exposure to vibrations, with frequent exposure to loud noises, but that she had no restrictions in reaching, handling, fingering, feeling, pushing, or pulling (Tr. 527). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, office helper and marker (Tr. 531-532).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate her impairments in accordance with Listing 1.04, and (ii) failing to properly evaluate the opinion of a non-examining physician. The undersigned Magistrate Judge agrees with the claimant's second contention, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of lumbar and cervical spine degenerative disc disease, as well as the nonsevere impairments of diabetes

-4-

mellitus, hypertension, hyperlipidemia, GERD, COPD, and adjustment disorder (Tr. 522-523). The relevant medical evidence demonstrates that, prior to her alleged onset date, the claimant was awarded short-term disability benefits in 2010 following a motor vehicle accident during which she sustained a cervical strain and a thoracolumbar strain and for which she was sent to physical therapy in November 2010 (Tr. 254-258, 265-288, 332). She then underwent a second round of physical therapy in March 2011 following increased complaints of pain in the lumbar and cervical spines (Tr. 290). She continued to complain of pain and radiating symptoms were constant, but upon discharge the treatment note indicates improvement in some areas with range of motion and strength (Tr. 302).

    A January 2011 MRI of the lumbar spine was normal for the claimant's age. A February 2011 MRI of the cervical spine revealed no evidence of focal disk herniation, but mild diffuse disk bulges at C5-6 and C6-7 (Tr. 327-328). Upon reexamination in March 2011, Dr. Stephen Wilson assessed the claimant with radiculopathy, sprain/strain, and trigger points in both the cervical spine and lumbar spine, and with sprain/strain and trigger points in the thoracic spine (Tr. 335). He recommended a further MRI and EMG studies, as well as epidural steroid injections (Tr. 335). A September 2011 MRI of the lumbar spine revealed small protrusions that are only two to three mm in depth, largely left foraminal at both levels, with mild left and borderline right foraminal narrowing at L3/4 and L4/5, but the central canal was not compromised (Tr. 390). A September 2011 MRI of the cervical spine revealed mild annular disc bulging with three to four mm foraminal disc protrusions, with moderate narrowing of the bilateral foramina at C4/5, C5/6, and C6/7. Additionally, the exiting C6 and C7 nerves, respectively, were likely compromised to some degree,

which would easily contribute to an element of radiculopathy in any of the four respective distributions (Tr. 392).

In February 2012 (after the alleged onset date), the claimant underwent MRIs of the cervical spine and lumbar spine. As to the lumbar spine, the MRI revealed shallow sub-3mm posterior disc protrusions without thecal sac effacement, and the central canal was not compromised at L3/4 to L5/S1, but there was mild narrowing of the foramina at all three levels, due in part to mild hypertrophy of the facet joints (Tr. 385). The claimant's cervical spine MRI revealed a prominent posterior disc protrusion at C5/6 with some associated endplate spurring, especially in the foramina, and there was near anterior surface cord contact, along with borderline narrowing of the central canal with moderate narrowing of both foramina, and the exiting C6 nerves were likely compromised which could easily cause left and/or right C6 radiculopathy. Additionally, at C6/7, there was a similar posterior disc protrusion that was slightly less pronounced, but greatest in the foramina, as well as borderline narrowing of the central canal with moderate narrowing of the foramina, right greater than left. Finally, the impression was that the C7 nerves may be compromised to some extent as they exit, and there could be right and possibly left C7 radiculopathy as a result (Tr. 387).

The claimant also underwent a series of three epidural steroid injections from January 26, 2012 through March 15, 2012 when she continued to complain "bitterly of pain" (Tr. 394-397, 419). Following that series, Dr. James Mayoza evaluated the claimant and found that she had an internal disc derangement, as well as markedly positive straight leg raising on the left and contralateral right straight leg raising positive reaction for

positive nerve tension signs (Tr. 411). He stated that he would continue conservative treatment, but that she might need an L5 disc decompression and that it might require further surgical stabilization (Tr. 412). On July 3, 2012, Dr. Mayoza wrote that he had explained to the claimant that surgery was not indicated, but that she would continue to require evaluation and treatment of approximately $20,000.00, including MRIs and some physical therapy on an as-needed basis (Tr. 453).

At the initial stage, state reviewing physicians determined that the claimant could perform light work with no additional limitations, which includes the ability to stand/walk up to six hours in an eight-hour workday (Tr. 446-452). This opinion was affirmed upon review (Tr. 466). Following the most recent administrative hearing, the ALJ asked Dr. John Anigbogu to complete a "Medical Interrogatory Physical Impairment(s) – Adults," in addition to a physical RFC assessment. Dr. Anigbogu indicated that the claimant's impairments included neck/low back pain, hypertension, diabetes mellitus II (poorly controlled), dyslipidemia, and GERD (Tr. 903). Although instructed to cite the objective medical findings in support of this opinion, Dr. Anigbogu cited none (Tr. 903). He indicated that the claimant's impairments did not meet a listing but did not provide a rationale for this despite being instructed to do so (Tr. 904). When instructed to identify functional limitations the claimant had, he instead reiterated her list of impairments (Tr. 905). As to the physical RFC assessment, Dr. Anigbogu indicated that the claimant could lift/carry up to ten pounds continuously and up to twenty pounds occasionally, that she could sit up to six hours in an eight-hour workday and stand/walk up to three hours in an eight-hour workday, and she did not require a cane to ambulate (Tr. 906-907). He further

found that she could frequently use foot controls, climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but that she could never climb ladders/scaffolds (Tr. 909). He further indicated that she could never be around unprotected heights, and that she could only occasionally be around vibrations (Tr. 910). Although there were places on the form fro the information, Dr. Anigbogu did not indicate the time period for which these limitations applied, when they were first present, or if they would last twelve consecutive months (Tr. 911).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 16-23). The ALJ specifically noted the claimant's treatment of steroid injections as well as the February 2012 MRIs (Tr. 528-529). He found the claimant's subjective allegations out of proportion to the objective medical evidence and concluded that treatment had been successful in controlling her lumbar and cervical pain because Dr. Mayoza did not believe surgery was an option and she no longer used prescription pain medication (although she continued to report 8 and 9/10 pain levels with over-the-counter medication) (Tr. 529). He then declined to give great weight to a treating source opinion that pre-dated her alleged onset date but gave great weight to the state reviewing physician opinions and Dr. Anigbogu because all three "consistently" found she could perform light work (Tr. 530). He then adopted the additional limitations proposed by Dr. Anigbogu, except for the limitation to standing/walking only three hours in an eight-hour workday, which he did not address or discuss (Tr. 530). He then concluded that the claimant was not disabled and found she could perform two light jobs.

Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996).³ These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion] (*citing* 20 C.F.R. § 416.927(f)(2)(ii)). Here, the ALJ gave great weight to Dr. Anigbogu's opinion, but did not mention his finding that the claimant could only stand/walk up to three hours in an eight-hour workday, or why he had rejected it. This is improper picking and choosing. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") (*citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]).

Since the ALJ failed to conduct the appropriate analysis regarding the opinion evidence in the record, his RFC thus fails to account for *all* the evidence in the record.

---

³ Soc. Sec. Rul. 96-6p was rescinded and replaced by Soc. Sec. Rul. 17-2p for claims filed on or after March 27, 2017. *See* Soc. Sec. Rul. 17-2p, 2017 WL 3928306 (Mar. 27, 2017). Because the claimant filed her application on February 6, 2012, Soc. Sec. Rul. 96-6p applies in this case.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *5.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the

case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**